# EXHIBIT C

Trials@uspto.gov
Tel: 571-272-7822

Paper 24
Entered: May 20, 2014

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

EBAY ENTERPRISE, INC.
Petitioner

v.

LAWRENCE B. LOCKWOOD
Patent Owner

_____

Case CBM2014-00025
Patent 7,010,508 B1

_____

Before SALLY C. MEDLEY, MICHAEL W. KIM, and
BENJAMIN D. M. WOOD, *Administrative Patent Judges.*

WOOD, *Administrative Patent Judge.*

DECISION
Institution of Covered Business Method Review
*37 C.F.R. § 42.108*

CBM2014-00025
Patent 7,010,508 B1

# I.    INTRODUCTION

## A.    Background

eBay Enterprise, Inc. ("EEI")[1] filed a petition (Paper 1, "Pet.") to institute a review under the transitional program for covered-business-method patents of U.S. Patent No. 7,010,508 B1(Ex. C to Ex. 1010, "the '508 patent").[2]  Patent Owner Lawrence B. Lockwood ("Lockwood")[3] filed a Preliminary Response (Paper 12, "Prelim. Resp.").  We have jurisdiction under 35 U.S.C. § 314.

The standard for instituting a covered-business-method patent review is set forth in 35 U.S.C. § 324(a), which provides as follows:

> THRESHOLD—The Director may not authorize a post-grant review to be instituted unless the Director determines that the information presented in the petition filed under section 321, if such information is not rebutted, would demonstrate that it is more likely than not that at least 1 of the claims challenged in the petition is unpatentable.

---

[1] The petition names GSI Commerce Solutions, Inc. ("GSI") as Petitioner.  *See* Paper 1, cover page.  In a paper filed April 11, 2014, Petitioner gave notice that GSI had changed its name to EEI.  Paper 16 at 1.

[2] EEI mistakenly identifies the '508 patent as Ex. 1007.  Pet. at 1. Instead, Ex. 1007 is U.S. Pat. No. 5,576,951.  *See* Ex. 1007.  The '508 patent is in the record as Ex. C to Ex. 1010 (hereinafter "Ex. 1010/C").

[3] The petition names Landmark Technologies, LLC ("Landmark") as the Patent Owner.  Paper 1, cover page.  In a paper filed February 21, 2014, Mr. Lockwood gave notice that he owns the '508 patent and that Landmark is the licensee of the patent.  Paper 14 at 2.

CBM2014-00025
Patent 7,010,508 B1

EEI challenges the patentability of claims 1-17 of the '508 patent under 35 U.S.C. §§ 112 ¶ 2,[4] and 103. Taking into account Lockwood's preliminary response, we determine that the information presented in the petition demonstrates that it is more likely than not that the challenged claims are unpatentable under 35 U.S.C. § 112 ¶ 2. As a result, we are unable to reach the alleged grounds of unpatentability based on 35 U.S.C. § 103. Accordingly, pursuant to 35 U.S.C. § 324, we authorize a covered business method patent review to be instituted as to claims 1-17 of the '508 patent.

## B.    Related Proceedings

EEI discloses that the '508 patent is involved in *Landmark v. iRobot*, Case No. 6:13-cv-411, E.D. Tex. 2013, and is the subject of *Ex Parte* Reexamination No. 90/012,671 ("the '671 Reexam"). Pet. 7. EEI further discloses that it has petitioned for covered-business-method patent review of a related patent, 5,576,951. *Id.*; *see eBay Enterprise, Inc. and eBay, Inc. v. Lockwood*, CBM2014-00026 (Papers 1, 20). Lockwood discloses that the '508 patent is involved in 16 additional suits that are pending in the Eastern District of Texas. *See* Paper 18 at 2-3 and n.2.[5]

---

[4] Section 4(c) of the America Invents Act. Pub. L. 112-29, 125 Stat. 284, 329 (2011) ("AIA") re-designated 35 U.S.C. § 112 ¶¶ 1-6 as 35 U.S.C. § 112(a)-(f). Because the '508 patent has a filing date prior to September 16, 2012, the effective date of the AIA, we refer to the pre-AIA version of 35 U.S.C. § 112.

[5] Lockwood suggests that we should not institute CBM review because EEI failed to inform the Board of all related proceedings as it was required to do under 37 C.F.R. § 42.42.8(b)(2). Prelim. Resp. 3-4. Rule 42.8 requires each party to identify "any other judicial or administrative matter that would affect, or be affected by, a decision in the proceeding."

CBM2014-00025
Patent 7,010,508 B1

### C.    *The Claimed Subject Matter*

The '508 patent is directed to "terminals used by banking and other financial institutions to make their services available at all hours of the day from various remote locations." Ex. 1010/C, 1:22-25.  As shown in figure 1, the preferred embodiment comprises financial institution 101 linked to a plurality of remote self-service terminals 105 and a credit rating service 103. *Id.*, 2:27-30; fig. 1.  Central processor 104 of financial institution 101 "periodically sends to the terminals 105 at the various remote sites 102 loan rate information and other data pertinent to the loans available from that institution." *Id.*, 3:11-14.  Each terminal 105, depicted in figure 2, comprises videodisc 114, video screen 118, and data processor 113 that controls operation of the terminal. *Id.*, 3:34-36, 39-43, 54-55.  A recording of an image and sound of a fictitious loan officer is read from videodisc 114 and appears on video screen 118. *Id.*, 4:7-10.  The fictitious bank loan officer guides a loan applicant through the application process. *Id.*, 3:55-58; fig. 3.  The applicant answers questions posed by the fictitious loan officer via touch pad 119. *Id.*, 4:14-17; fig. 2.  Based on the applicant's answers, the terminal communicates with financial institution 101 (to get a previous quote provided to the applicant, if one exists) and credit rating service 103 (to receive the applicant's credit rating) to process the loan. *Id.*, 4:22-25, 37-48; 5:22-25; figs. 1, 4, 5.  The terminal analyzes the applicant's financial

---

37 C.F.R. § 42.8(a)(1)-(2), (b)(2).  While a failure to comply with an applicable rule may be sanctioned (37 C.F.R. § 42.12(a)(1)), we do not believe that a sanction, much less dismissal of the petition, is appropriate here.  Lockwood has not shown that EEI failed to identify a related proceeding of which Petitioner was aware.  Moreover, we presume that Patent Owner has identified all related proceedings that EEI did not identify in the petition.

CBM2014-00025
Patent 7,010,508 B1

profile and computes the applicant's credit worthiness based on the financial institution's criteria, and decides whether or not to grant the loan. *Id.*, 5:28-31, 35-41.

The Specification states that the system depicted in figure 1 "could be applied to other forms of transactions in which information has to be acquired from a customer then processed to a decision or into the performance of a particular task." *Id.*, 5:59-62. For example, the system could be used to prepare and file income tax returns, in which case the fictitious person who appears on the video can instruct the applicant how to fill out the tax form. *Id.*, 5:63-67. The system could also be used "as a trading network between buyers and sellers of securities." *Id.*, 6:7-8.

D. *Exemplary Claims*

Independent claims 1, 8, and 16, reproduced below, are illustrative of the claimed subject matter:

1. An automated multimedia system for data processing which comprises:

a computerized installation including a database, means for entering data into said database, and a program means for storing, processing, updating, and retrieving data items in response to coded requests from stations in communication with said installation;

at least one station including a general purpose computer and a program applicable to said computer for sending said requests to said installation;

means for communicating data back and forth between said installation and said station;

said station further including:

a mass memory and means associated therewith for storing and retrieving textual and graphical data;

5

CBM2014-00025
Patent 7,010,508 B1

a video display and means associated therewith for displaying textual and graphical data;

means for entering information into said computer;

means for programming sequences of inquiring messages on said video display in accordance with preset routines and in response to said information;

said sequences including instructions to an operator of said station for operating said station; and

means for selectively and interactively presenting to said operator interrelated textual and graphical data describing a plurality of transaction options, and for selectively retrieving data from said mass memory;

means for storing information, inquiries, and orders for transactions entered by said operator via said means for entering information;

means for transmitting said inquiries and orders to said installation via said means for communicating;

means for receiving data comprising operator-selected information and orders from said installation via said means for communicating; and

means for interactively directing the operation of said computer, video display, data receiving and transmitting means, and mass memory comprising means for holding an operational sequencing list, means for processing said operator-entered information, inquiries, and orders according to backward-chaining and forward-chaining sequences, and means responsive to the status of said computer, display, mass memory, and data receiving and transmitting means for controlling their operation;

said means for processing including means for analyzing said operator-entered information and means, responsive to said means for analyzing, for presenting additional inquiries in response to said operator-entered information;

said computerized installation further including:

means responsive to items received from said station for immediately transmitting selected data retrieved from said database to sais station;

6

CBM2014-00025
Patent 7,010,508 B1

means responsive to an order received from said station for updating data in said database including means for correlating to a particular set of data received from said station;

whereby said system can be used by a plurality of entities, each using one of said stations, to exchange data, and to respond to inquiries and orders instantaneously or over a period of time.

8. An automated multimedia system for data processing for delivering information on request to at least one user, which comprises:

at least one computerized station;

means for accepting and processing an user's entry according to backward-chaining and forward-chaining sequences, including:

means for analyzing and for combining an user's entry with a set of stored data, and

means, responsive to said means for analyzing and for combining, for formulating a query and outputting said query to said user; and

means for delivering information to said user.

16. An automated multimedia data processing system which comprises:

at least two computerized stations, each including:

at least one access means;

a mass memory and a database stored in said mass memory;

means for storing, processing, updating, and retrieving data;

program means for controlling said storing, processing, updating, and retrieving data means in response to coded requests entered on said access means;

means, associated with said mass memory, for storing and retrieving textual and graphical data;

means for processing interrelated textual and graphical data describing a plurality of transaction operations, and

7

CBM2014-00025
Patent 7,010,508 B1

for selectively retrieving data from said mass memory; interrelating textual and graphical data stored in said mass memory, and accessible through interrelated textual and graphical access path means;

means for accepting and processing said requests according to backward-chaining and forward-chaining sequences;

means responsive to said coded requests for automatically displaying selected data;

means for interactively directing the operation of said various means,

and of said mass memory, said means for directing comprising means for holding an operation sequencing list and means responsive to the status of said mass memory, and said various means, for controlling their operations.

### E.     Prior Art Relied Upon

EEI relies upon the following prior-art references:

U.S. Patent No. 4,359,631 to Lockwood et al., filed Jul. 11, 1980 ("the Lockwood patent") (Ex. 1001);

Dungan, C., *A Model of an Audit Judgment in the Form of an Expert System* 1-201 (May 23, 1983) (Ph. D. dissertation, University of Illinois) ("Dungan") (Ex. 1002);

Dzierzanowski, J. et al., *GAITSPERT: An Expert System for the Evaluation of Abnormal Human Locomotion Arising from Stroke*, 32 IEEE TRANSACTIONS ON BIOMEDICAL ENGINEERING 935-942 (Nov. 1985) ("GAITSPERT") (Ex. 1003);

Van Melle, W. et al., THE EMYCIN MANUAL (Stanford Univ. Nov. 9, 1981) ("EMYCIN") (Ex. 1004);

Johnson, H. et al., *Expert System for Diesel Electric Locomotive Repair*, 1 J. FORTH APPL. & RES. 7-16 (Sept. 1983) ("Johnson") (Ex. 1005);

Gordon, R., *An Interactive Video Information Terminal*, 3 1982 IEEE GLOBAL TELECOMM. CONF. REC. 1356-1360 (Nov. 29-Dec. 2, 1982) ("Gordon") (Ex. 1006).

CBM2014-00025
Patent 7,010,508 B1

   *F.     Asserted Grounds of Unpatentability*

   EEI contends that claims 1-17 of the '508 patent are unpatentable on

the following grounds:  (1) indefinite under 35 U.S.C. § 112 ¶ 2; and (2)

obvious under 35 U.S.C. § 103 based on the following combinations:

| Reference[s] | Claims Challenged |
|---|---|
| Lockwood, Johnson, EMYCIN | 1-17 |
| Lockwood, Dungan, Gordon, and EMYCIN | 1-17 |
| Lockwood, GAITSPERT, Gordon, and EMYCIN | 1-17 |

## II.    ANALYSIS

   *A.    Standing Under the Transitional Program for*
   *Reviewing Covered Business Methods*

   The parties dispute whether EEI has standing to seek review of the

'508 patent under the transitional program for reviewing covered-business-

method ("CBM") patents.  "[T]he starting point for a standing determination

for a litigant before an administrative agency . . . is the statute that confers

standing before that agency." *Ritchie v. Simpson*, 170 F.3d 1092, 1095 (Fed.

Cir. 1999).  In this case, the starting point is AIA § 18, which creates the

transitional CBM-patent-review program.  This section states in relevant

part:  "A person may not file a petition for a transitional proceeding with

respect to a covered business method patent unless the person or the

person's real party in interest or privy has been sued for infringement of the

patent or has been charged with infringement under the patent."  AIA

§ 18(a)(1)(B).  This requirement is repeated in 37 C.F.R. § 42.302(a), which

further defines "charged with infringement" to mean that "a real and

substantial controversy regarding infringement of a covered business method

CBM2014-00025
Patent 7,010,508 B1

patent exists such that the petitioner would have standing to bring a declaratory judgment action in Federal court." 37 C.F.R. § 42.302.

EEI asserts that it has been "charged with infringement" under this rule because Lockwood sued EEI's customer, iRobot, for infringement of the '508 patent based on iRobot's use of EEI systems and software, and EEI is obligated to indemnify iRobot if infringement is found. Pet. 2-3. EEI argues that its indemnification obligation confers on it declaratory-judgment standing, and therefore, under rule 42.302, standing to petition for CBM review of the '508 patent. *Id.* (citing *Arris Group, Inc. v. British Telecomm. PLC*, No. 2010-1292 at 10 (Fed. Cir. 2011).

Lockwood disputes that EEI has standing. First, Lockwood argues that the petition "failed to provide evidence of an indemnification contract or any connection between the iRobot litigation and GSI's systems and software." Prelim. Resp. 8. Second, Lockwood disputes EEI's contention that having an obligation to indemnify iRobot automatically confers standing to EEI. *Id.* at 9-12.

After the petition and preliminary response were filed, EEI moved to submit briefing, along with the declaration of EEI's patent counsel, Howard I. Sherman, to provide clarification regarding EEI's obligation to indemnify iRobot. Paper 20 at 2. EEI asserts that while it only had to "certify" in the petition that it had standing, it wishes to provide Mr. Sherman's declaration to clarify the record. *Id.* at 2-3. Lockwood opposes the motion. Paper 22. According to Lockwood, Rule 42.304(a) requires that a CBM petition "demonstrate" standing rather than merely provide certification of standing. *Id.* at 2. Lockwood further argues that EEI's late submission of the Sherman Declaration is not permitted by the rules. *Id.* at 3-4. Finally, Lockwood

10

CBM2014-00025
Patent 7,010,508 B1

argues that the dismissal of the iRobot suit after the petition was filed
removes any standing that EEI may have had. *Id.* at 5-7.

To the extent that Rule 42.304(a) requires that a petitioner provide
evidence of standing with the petition and no later, we exercise our
discretion under Rule 42.5(b) and waive that requirement. First, we
acknowledge that our Office Patent Trial Practice Guide is equivocal on
what is required of a CBM petition in this regard. Specifically, the Practice
Guide states that among the specific requirements for petitions for all AIA
proceedings, including CBM proceedings, "[a] petitioner must certify that
the patent or application is available for review and that the petitioner is not
barred or estopped from seeking the proceeding." Office Patent Trial
Practice Guide, 77 Fed. Reg. 48756, 48763 (Aug. 14, 2012). It is not
unreasonable for a petitioner to rely on this characterization and believe that
certification alone is sufficient. Second, we believe that considering EEI's
evidence now, rather than denying the petition as to EEI and having it file a
new petition merely to provide the same evidence, is a more efficient use of
Board and litigant resources. Accordingly, we will consider the Sherman
Declaration.

"[W]here a patent holder accuses customers of direct infringement
based on the sale or use of a supplier's equipment, the supplier has standing
to commence a declaratory judgment action if . . . the supplier is obligated to
indemnify its customers from infringement liability." *Arris Group, Inc. v.
British Telecomm. PLC*, 639 F.3d 1368, 1375 (Fed. Cir. 2011).[6] We credit
the Sherman Declaration, and find that at the time the Petition was filed, EEI

---

[6] We have considered Patent Owner's arguments against applying
*Arris* in this case, Prelim. Resp. 11-13, and find them unpersuasive.

11

CBM2014-00025
Patent 7,010,508 B1

was obligated to indemnify iRobot. The subsequent dismissal of the iRobot suit is irrelevant, as the requirements of Rule 42.302(a) need be met only at the time of filing. *See* 37 C.F.R. § 42.302(a) ("A petitioner may not file with the Office a petition to institute a covered business method patent review . . . unless the petitioner . . . has been charged with infringement."). Moreover, we are not persuaded by Lockwood's argument that dismissal of the iRobot suit extinguishes EEI's standing because it eliminates any Article III case or controversy between the parties. Paper 22 at 6-7. Article III case-or-controversy considerations do not apply to administrative proceedings. *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1376 (Fed. Cir. 2012).

        B.    *Whether the '508 Patent is a Covered Business Method Patent or a Patent for a Technological Invention*

The parties also dispute whether the '508 patent is a "covered business method patent," as defined in the AIA and 37 C.F.R. § 42.301.

A "covered business method patent" is a patent that "claims a method or corresponding apparatus for performing data processing or other operations used in the practice, administration, or management of a financial product or service, except that the term does not include patents for technological inventions." AIA § 18(d)(1); *see* 37 C.F.R. § 42.301(a).

Lockwood does not dispute, at least at this preliminary stage, that the '508 patent claims "a method or corresponding apparatus for performing data processing or other operations used in the practice, administration, or management of a financial product or service." Based on the current record, we agree with EEI that the '508 patent relates to a financial product or service as required by AIA § 18(d)(1) and 37 C.F.R. § 42.301. Thus, the

CBM2014-00025
Patent 7,010,508 B1

specific issue presented is whether the '508 patent claims a technological
invention.

Whether a patent is for a technological invention under AIA
§ 18(d)(1) is determined by considering, on a case-by-case basis: (1)
"whether the claimed subject matter as a whole recites a technological
feature that is novel and unobvious over the prior art;" and (2) whether the
claimed subject matter as a whole "solves a technical problem using a
technical solution." 37 C.F.R. § 42.301(b). The following claim drafting
techniques, for example, typically do not render a patent a "technological
invention":

(a) Mere recitation of known technologies, such as computer
hardware, communication or computer networks, software,
memory, computer-readable storage medium, scanners,
display devices or databases, or specialized machines, such
as an ATM or point-of-sale device;

(b) Reciting the use of known prior-art technology to
accomplish a process or method, even if that process or
method is novel and non-obvious;

(c) Combining prior art structures to achieve the normal,
expected, or predictable result of that combination.

Office Patent Trial Practice Guide, 77 Fed. Reg. 48,756, 48,763-64
(Aug. 14, 2012).

Because a patent need have only one claim directed to a covered
business method to be eligible for review,[7] we focus our inquiry on claim 8.
Claim 8 is drawn to an "automated multimedia system for data processing

---

[7] *See* Transitional Program for Covered Business Method Patents—
Definitions of Covered Business Method Patent and Technological
Invention; Final Rule, 77 Fed. Reg. 48,734, 48,736 (Aug. 14, 2012)
(Comment 8).

13

CBM2014-00025
Patent 7,010,508 B1

for delivering information on request to at least one user," and recites, inter alia, a "computerized station" and several limitations written in means-plus-function format, the corresponding structure of which would need to be discerned from the written description. The written description, in turn, indicates that the invention may be implemented using the self-service terminals disclosed in the Lockwood patent. *See* 1:34-43. The Lockwood patent issued on Nov. 16, 1982, before the earliest possible effective filing date of the '508 patent, May 24, 1984.[8] Ex. 1001, cover page. On the record before us, therefore, we determine that to the extent that claim 1 recites technology via its mean-plus-function claim limitations, it recites technology that existed before the earliest possible effective filing data of the '508 patent. Accordingly, on the present record, we determine that the subject matter of claim 1, as a whole, does not recite "a technological feature that is novel and unobvious over the prior art," and is therefore not a technological invention. Pet. 5.

Lockwood responds that "the Petition's obviousness analysis is fatally flawed and does not show that the claims were 'well known in the art.'" Prelim. Resp. at 13. This argument is not persuasive because our determination above does not rely on the petition's obviousness analysis, but rather on the '508 patent's disclosure. Lockwood also argues that the '508 patent is a pioneering patent (because more than 1000 subsequent patents have cited "a Lockwood patent as prior art"), and therefore the '508 patent "fall[s] into the technological exception." *Id.* at 14-18. But Lockwood provides no support for the notion that a pioneer patent is necessarily one

---

[8] For purposes of this decision we need not, and do not, determine whether the '508 patent is entitled to this priority date.

CBM2014-00025
Patent 7,010,508 B1

that claims a technological invention, and such notion is not self-evident to us. Therefore, we are not persuaded by this argument.

C.    *Definiteness, 35 U.S.C. § 112 ¶ 2*

EEI asserts that claims 1-17 of the '508 patent are indefinite under 35 U.S.C. § 112 ¶ 2. Specifically, EEI asserts that the following limitations in claim 1 are means-plus-function claim limitations, and that the written description does not disclose structure that performs the functions they recite:  (1) "means for selectively and interactively presenting to said operator interrelated textual and graphical data describing a plurality of transaction options;" and (2) "means for processing said operator-entered information, inquiries, and orders according to backward-chaining and forward-chaining sequences." Pet. 21. EEI also asserts that "remaining independent claims 8 and 16 also include the 'backward-chaining and forward-chaining sequences'[9] limitations and claim 16 further includes reference to 'interrelated textual and graphical data.'"[10] *Id.* at 21 n.8. We therefore consider these means-plus-function limitations in conjunction with the claim 1 limitations.

The limitations at issue recite the term "means," which creates a rebuttable presumption that they are written in means-plus-function format

_____

[9] Claim 8 recites "means for accepting and processing an user's entry according to backward-chaining and forward-chaining sequences." Ex. 1010/C, 7:51-53. Claim 16 recites "means for accepting and processing said requests according to backward-chaining and forward-chaining sequences." *Id.*, 8:44-46.

[10] Claim 16 recites "means for processing interrelated textual and graphical data describing a plurality of transaction options." Ex. 1010/C, 8:37-38

15

CBM2014-00025
Patent 7,010,508 B1

under 35 U.S.C. § 112 ¶ 6.  *TriMed, Inc. v. Stryker Corp.*, 514 F.3d 1256,
1259 (Fed. Cir. 2008).  The presumption may be rebutted if the limitation
recites structure that performs the specified function.  *Personalized Media
Communications, LLC v. International Trade Com'n*, 161 F.3d 696, 704
(Fed. Cir. 1998).  None of these limitations appears to recite any structure.
Moreover, Lockwood does not dispute EEI's contention that they are means-
plus-function limitations.  Accordingly, we will interpret them in accordance
with 35 U.S.C. § 112 ¶ 6.

Under 35 U.S.C. § 112 ¶ 6, "[a]n element in a claim for a combination
may be expressed as a means or step for performing a specified function
without the recital of structure, material, or acts in support thereof."  *Id.*  But
the scope of a claim containing such a means-plus-function limitation is
limited to "the corresponding structure, material, or acts described in the
specification and equivalents thereof."  *Id.*  Construing a claim under 35
U.S.C. § 112 ¶ 6 is thus a two-step process.  The first step is identifying the
particular function recited.  *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d
1327, 1333 (Fed. Cir. 2004) (citation omitted).  The second step is
identifying, in the specification, the structure that corresponds to that
function.  *Id.* at 1334.  "Under this second step, structure disclosed in the
specification is corresponding structure only if the specification or
prosecution history *clearly links or associates* that structure to the function
recited in the claim."  *In re Aoyama*, 656 F.3d 1293, 1297 (Fed. Cir. 2011)
(internal quotation omitted) (emphasis added).  Failure to disclose structure
that performs the claimed function renders the claim invalid for
indefiniteness under 35 U.S.C. § 112 ¶ 2.  *Aristocrat Tech. Aus. Pty Ltd. v.*

16

CBM2014-00025
Patent 7,010,508 B1

*Int'l Game Tech.*, 521 F.3d 1328, 1331 (Fed. Cir. 2008) (citing *In re*
*Donaldson*, 16 F.3d 1189, 1195 (Fed. Cir. 1994) (en banc)).

"In cases involving a computer-implemented invention in which the
inventor has invoked means-plus-function claiming, [the Federal Circuit] has
consistently required that the structure disclosed in the specification be more
than simply a general purpose computer or microprocessor." *Aristocrat*, 521
F.3d at 1333. This is because "general purpose computers can be
programmed to perform very different tasks in very different ways," so that
simply disclosing a computer as the structure that performs the claimed
function does not limit the scope of the claim as required by § 112 ¶ 6. *Id.*
Therefore, in a means-plus-function claim "in which the disclosed structure
is a computer, or microprocessor, programmed to carry out an algorithm, the
disclosed structure is not the general purpose computer, but rather the
special purpose computer programmed to perform the disclosed algorithm."
*Id.* (internal quotation omitted). In other words, "[T]he corresponding
structure for a § 112 ¶ 6 claim for a computer-implemented function is the
algorithm disclosed in the specification." *Id.* (quoting *Harris Corp. v.*
*Ericsson Inc.*, 417 F.3d 1241, 1249 (Fed. Cir. 2005). With the above in
mind, we address each limitation in turn.

      1.     *means for selectively and interactively presenting to said*
               *operator [or processing [claim 16]] interrelated textual*
               *and graphical data describing a plurality of transaction*
               *options*

EEI asserts that claims 1-17 are indefinite because there is no
structural support for the claim 1 limitation "means for selectively and
interactively presenting to said operator interrelated textual and graphical
data describing a plurality of transaction options," or the claim 16 limitation

CBM2014-00025
Patent 7,010,508 B1

"means for processing interrelated textual and graphical data describing a plurality of transaction options." Prelim. Resp. 21-23. The function that these limitations recite is "selectively and interactively presenting to said operator" (claim 1), or "processing" (claim 16), "interrelated textual and graphical data describing a plurality of transaction options." According to EEI, "there is no description or teaching in the '508 Patent as to what is meant by *interrelated textual and graphical data*." Pet. 22-23. Further, referring to a July 7, 1997 Response to a Non-Final Office Action ("July 7, 1997 Response," Ex. 2007), EEI asserts that Lockwood identified the data that is "periodically sent to the terminals" as the claimed textual data, and identified the fictitious loan officer, the image of which is stored on videodisc 114 of terminal 105, as both the graphical data and the vehicle for "selectively and interactively presenting to said operator interrelated textual and graphical data" to the operator. Pet. 22-23 (citing Ex. 2007 at 8). EEI argues that while videodisc 114 is controlled by data processor 113,

> there are no algorithms disclosed nor any other teaching in the '508 Patent of how to program either the data processor 113 or the videodisc 114 to 'selectively and interactively' present to an operator *interrelated textual and graphical data describing a plurality of transaction options*, as required by the means language of claim 1.

*Id.* (emphasis in original).

Lockwood argues that the specification discloses structure that corresponds to the this function "in prose and through the use of flow diagrams." Prelim. Resp. 37. Lockwood states, in this regard:

> For example, "[t]he central processor 104 of the financial institution 101 periodically *sends* to the terminals 105 . . . loan rate information and other data pertinent to the loans available

18

CBM2014-00025
Patent 7,010,508 B1

. . .” "That information is *stored* in the various terminals and
can be reviewed by an applicant in need of a loan.” Regarding
the fictitious loan officer, “[t]he operation of the terminal is
controlled by a data processor 113,” and “[o]nce the system is
*activated* 125 the recording of an image and sound of a
fictitious loan officer is *read from the videodisc 114 and
appears on the video screen 118*.” "The video screen 118
*displays* the picture of the fictitious loan officer who *informs*
the applicant about the various types of loans available [e.g.,
loan rate information] . . . .” And during this interaction, the
applicant is shown “a menu allowing him to choose between”
various types of loans, e.g., transaction options.

*Id.* at 37-38 (quoting Ex. [] ) (emphasis and bracketed text in original).

According to Lockwood, a POSA would have understood from these
disclosures an algorithm for a processor to “receive and store data; activate a
process; read image and sound files from a memory, e.g., a videodisc; and
display the video and sound files along with textual data, e.g., a menu of
transaction options.” Prelim. Resp. 38.

Neither EEI nor Lockwood contends that either the specification or
the prosecution history of record “clearly links or associates” structure
disclosed in the specification to the “presenting” or “processing” functions.
*See Aoyama*, 656 F.3d at 1297. Nor have we found anything in the
specification or prosecution history of record that does so. Moreover,
having reviewed the specification, and in particular those excerpts cited by
Lockwood, we are unable, on the present record, to find an algorithm that
can be used to program a general-purpose computer to “selectively and
interactively presenting,” or “processing,” “interrelated textual and graphical
data.”. *Cf. Hyatt v. Dudas*, 492 F.3d 1365, 1370 (Fed. Cir. 2007) (holding
that when adequate written description cannot be found in the specification,
“the only thing the PTO can reasonably be expected to do is to point out its

CBM2014-00025
Patent 7,010,508 B1

nonexistence"). While Lockwood contends that a POSA would understand the cited excerpts to recite an algorithm for a processor to "receive and store data; activate a process; read image and sound files from a memory, e.g., a videodisc; and display the video and sound files along with textual data, e.g., a menu of transaction options," this is not what is claimed. Prelim. Resp. 38. Lockwood does not explain how such an algorithm would accomplish the actual claimed functions of "selectively and interactively presenting," or "processing," "interrelated textual and graphical data." Therefore, on the present record, it appears that structure that corresponds to these functions is not disclosed as required by 35 U.S.C. § 112 ¶ 6.

2.    *means for processing said operator-entered information, inquiries, and orders according to backward-chaining and forward-chaining sequences*

EEI asserts that claims 1-17 are indefinite because there is no structural support for the limitation "means for processing said operator-entered information, inquiries, and orders according to backward-chaining and forward-chaining sequences" in claim 1, or the corresponding backward- and forward-chaining limitations in the other independent claims (in claim 8, "means for accepting and processing an user's entry according to backward-chaining and forward-chaining sequences," and in claim 16, "means for accepting and processing said requests according to backward-chaining and forward-chaining sequences," claim 16). Pet. 21 n.8, 23. EEI argues that in the July 7, 1997 Remarks Lockwood referred to backward-chaining and forward-chaining sequences as "complex search and retrieval routines," but "[t]here is absolutely no discussion in [the July 7, 1997 Remarks] of where the specification discloses how the 'complex search and

20

CBM2014-00025
Patent 7,010,508 B1

retrieval routines' are actually structured, programmed or implemented or what algorithms are used to perform them." Pet. 23-24.

Lockwood responds that the petition's "analysis of this feature is fatally flawed because it only considered the prosecution history of the '508 Patent, not the '508 Patent itself, when it performed its analysis." Prelim. Resp. 39. Lockwood also argues that a Board decision during the original prosecution of the '508 patent "found written description support for backward- and forward-chaining." *Id.* at 39-40 (citing Ex. 2011 at 11-13). Finally, Lockwood asserts that it "recently demonstrated that a similar backward- and forward-chaining feature (found in claim 8 of the '508 patent) is definite under 35 U.S.C. 112 ¶ 2." Prelim. Resp. 40 (citing Ex. 2006 at 21-32; Ex. 2012 at 15-26).

Again, neither EEI nor Lockwood contends that either the specification or the prosecution history of record "clearly links or associates" structure disclosed in the specification to the backward- and forward-chaining function. *See Aoyama*, 656 F.3d at 1297. Nor have we found anything in the specification or prosecution history of record that does so. And again, having reviewed the specification, we are unable, on the present record, to find an algorithm that can be used to program a general-purpose computer to perform the backward- and forward-chaining functions.

Further, we are not persuaded by any of Lockwood's counter-arguments. First, we disagree that the petition considered only the prosecution history, and not the specification, in its indefiniteness analysis. Rather, the petition discusses an excerpt from the prosecution in the context of whether it identifies which portions of the *specification* disclose the "complex search and retrieval routines" that make up the backward-chaining

CBM2014-00025
Patent 7,010,508 B1

and forward-chaining sequences. Pet. 23-24. Second, we disagree with
Lockwood that the prior Board decision it cites addressed the same issue as
that presented here. In that decision the Board reversed the examiner's
rejection of claims 1-17 under 35 U.S.C. § 112 ¶ 1 based on the examiner's
determination that backward- and forward-chaining function was not
adequately disclosed. Ex. 2011 at 13. But it did not consider whether, much
less find that, the specification adequately discloses structure that
corresponds to that function. Finally, we have reviewed the documents that
Lockwood asserts demonstrate that the backward- and forward-chaining
limitation of claim 8 is definite. Lockwood refers us to a 12-page section of
an Appeal Brief that it submitted in connection with the '671 Reexam, and
to a similar 12-page section of a Reply to Office Action it submitted in the
same proceeding. Prelim. Resp. at 40 (citing Ex. 2006 at 21-32 and Ex.
2012 at 15-26). We have reviewed these sections and are unable to locate a
specific discussion of the backward- and forward-chaining limitation of
claims 1, 8, and 16.

For the foregoing reasons, and on the present record, EEI has shown
that it is more likely than not that claims 1-17 of the '508 patent are
indefinite.

    D.    *Obviousness*

A patent claim is unpatentable under § 103 "if the differences between
the subject matter sought to be patented and the prior art are such that the
subject matter as a whole would have been obvious at the time the invention
was made to a person having ordinary skill in the art to which said subject

CBM2014-00025
Patent 7,010,508 B1

matter pertains." 35 U.S.C. § 103(a).[11]   The question of obviousness is resolved on the basis of underlying factual determinations, including (1) the scope and content of the prior art; (2) differences between the claimed subject matter and the prior art; (3) the level of ordinary skill in the art; and (4) secondary considerations of nonobviousness. *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966).   Because we have determined that the claims are, more likely than not, indefinite, we are unable to determine the scope of the claims of the '508 patent, and thus are unable to determine the differences between the claimed invention and the prior art.   We are therefore unable to consider EEI's proposed grounds of unpatentability based on § 103. *See In re Wilson*, 424 F.2d 1382, 1385 (CCPA 1970); *In re Steele*, 305 F.2d 859, 862-63 (CCPA 1962).

### III.   CONCLUSION

For the reasons stated above, we grant the petition and institute a covered-business-method patent review to the extent set forth in the Order.

### IV.   ORDER

For the reasons given, it is

ORDERED that the Petition is granted as to claims 1-17 of the '508 patent, and a covered-business-method patent review is hereby instituted as to claims 1-17 of the '508 patent on the alleged ground that they are unpatentable as indefinite under 35 U.S.C. § 112 ¶ 2;

---

[11] Because the '508 patent has a filing date prior to September 16, 2012, the effective date of the AIA, we refer to the pre-AIA version of 35 U.S.C. § 103.

CBM2014-00025
Patent 7,010,508 B1

   FURTHER ORDERED that no other ground of unpatentability alleged in the petition for any claim is authorized for this covered business method patent review;

   FURTHER ORDERED that pursuant to 35 U.S.C. § 324(d) and 37 C.F.R. § 42.4, notice is hereby given of the institution of a trial commencing on the entry date of this decision.

PETITIONER:

Don Daybell
James Maune
Orrick, Herrington & Sutcliffe LLP
ddaybell@orrick.com
jmaune@orrick.com

PATENT OWNER:

Robert Sterne
Donald Featherstone
Jason Eisenberg
Richard Bemben
Byron Pickard
Sterne, Kessler, Goldstein & Fox PLLC
rsterne@skgf.com
donf-PTAB@skgf.com
jasone-PTAB@skgf.com
rbemben-PTAB@skgf.com
bpickard-PTAB@skgf.com